IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TODD R. ALLEN, | : | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | : | CIVIL NO. 08-5534 (JBS) |
| v. | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : | **OPINION** |
| Defendant. | : |  |

APPEARANCES:

Alan H. Polonsky, Esq.
POLONSKY & POLONSKY
512 South White Horse Pike
Audubon, NJ 08106
        Attorney for Plaintiff

Maria Fragassi Santangelo,
Special Assistant United States Attorney
SOCIAL SECURITY ADMINISTRATION
26 Federal Plaza
Room 3904
New York, NY 10278
        Attorney for Defendant

**SIMANDLE**, District Judge:

# I.   INTRODUCTION

This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g)

(2006), to review the final decision of the Commissioner of the

Social Security Administration denying the application of

Plaintiff Todd R. Allen for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act.  See 42 U.S.C. §§ 401-

34 (2006).

At issue in this case is whether the ALJ properly determined the Plaintiff's residual functional capacity at step four.

For the reasons set forth below, the Court will vacate the decision of the ALJ and remand for further proceedings consistent with this opinion.

## II.   BACKGROUND

Mr. Allen was born on May 25, 1974, and currently lives in Paulsboro, NJ with his fiancé and two children. (R. at 99, 16-17.)  He graduated from high school, attended all "regular," non-special education classes, is 5'11" tall and weighs 330 pounds. (R. at 16-17.)  Plaintiff sustained a work-related shoulder injury on October 28, 2005, and underwent an arthroscopic labral reconstruction of the left shoulder to correct a chronic separation.  (R. at 25, 208.)

### A.   Procedural History

On September 11, 2002, Plaintiff filed an initial application for DIB which was denied initially and upon reconsideration. (R. at 50.)  A hearing request was dismissed on January 9, 2004 as Mr. Allen no longer wished to pursue DIB and no further appeal was filed.  Plaintiff does not allege being under a disability until after his earlier claim was denied. (Id.)  There is no reason to consider the question of whether the decision made with respect to the prior application should be reopened and revised.  Plaintiff filed his current application

2

for DIB on January 19, 2006. (Id.)  In his application for DIB, Plaintiff alleges he became unable to work because of his "disabling condition" on November 16, 2005.  (R. at 99.)  This claim was denied initially and a hearing appeal was filed on March 13, 2007.  (Id.)  On June 2, 2008, the ALJ rendered his opinion denying Plaintiff entitlement to DIB.  Plaintiff sought review of that decision, and the Appeals Council denied that request.  (R. at 1.)  Thus, the decision of the ALJ became the final decision of the Commissioner.  Plaintiff timely filed this action.

**B.   ALJ Opinion**

The ALJ first found that Plaintiff met the insured status requirements for disability benefits through December 31, 2011, pursuant to 42 U.S.C. § 423(c).  (R. at 102-03.)

The ALJ proceeded through the five steps of analysis required by regulation.  At step one, regarding substantial gainful activity, the ALJ did not find any such activity since November 16, 2005, the date of the alleged onset of disability. Plaintiff has earnings on record from 2006 and 2007 but the ALJ determined that these were not sufficient enough to qualify as substantial gainful activity.  (R. at 51.)  At step two, the ALJ determined that Plaintiff showed the following impairments: residuals of left (non-dominant) shoulder surgery, obstructive sleep apnea, morbid obesity, and excessive daytime somnolence.

(R. at 52.)

At step three, the ALJ had to determine if Plaintiff has a severe impairment that meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ determined that Plaintiff did not meet or equal the following relevant Listing Requirements: 1.02, Major Dysfunction of a Joint(s); Listing 1.07, Fracture of an Upper Extremity with Nonunion; and Listing 3.10, Sleep-Related Breathing Disorders, as well as Social Security Ruling ("SSR") 02-1p, Evaluation of Obesity.

Since the ALJ determined that Plaintiff did not meet or equal any Listing in Appendix 1, Subpart P, Regulations No. 4, he had to determine Plaintiff's residual functional capacity ("RFC") at step four.  A person's RFC is based on their ability to engage in work-related physical and mental activities in a work setting on a regular and continuing basis.  A "regular and continuing basis" is based on working five days a week and eight hours each day or an equivalent work schedule.  The ALJ determined that Plaintiff can perform less than medium work-light work and sedentary work.  (R. at 55-56.)  According to the ALJ, Plaintiff:

> retains the residual functional capacity to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds . . . . If someone can do light work, we (the Social Security Administration) determine that the individual can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long

4

> periods.  The claimant's capacity for light
> work is diminished by significant additional
> limitations as he is able to lift/carry ten
> pounds   frequently   and   twenty   pounds
> occasionally; can sit for six hours in an
> eight hour workday; is able to stand and/or
> walk for six hours in an eight hour workday;
> can occasionally climb ramps and stairs,
> balance, stoop, kneel, crouch, and crawl, but
> can never climb ladders, ropes, and scaffold;
> and must avoid all exposure to hazards, such
> as machinery and heights.

(Id.)

The ALJ based his opinion on Plaintiff's in-court testimony and "Function Report-Adult" and "Disability Report-Appeal" questionnaire, and the assessments, infra, conducted by Plaintiff's shoulder surgeon Dr. Thomas A. Dwyer, treating physician Dr. Gregory Breen, consulting physician Dr. Nithyashuba Khona, and state agency medical consultant Dr. Robert Walsh.

At step four, the ALJ had to determine if Plaintiff could return to his past relevant work.  Past relevant work is defined as work that (1) occurred within the past fifteen years (the so called "Recency" requirement, (2) was of sufficient duration to enable the worker to learn to do the job (the so called "Duration" requirement), and (3) was Substantial Gainful Activity.  The ALJ referred to the U.S. Department of Labor Dictionary of Occupational Titles and Selected Characteristics manuals ("DOT") to determine the exertional requirements of Plaintiff's past relevant work as a golf pro-shop cashier and assistant manager.  (R. at 59.)  Mr. Allen's past relevant work

5

is rated as light work as defined in the Social Security Act.
Plaintiff's limitations, the ALJ found, do not prevent him from
performing the duties of a golf pro-shop cashier and assistant
manager.  (R. at 60.)

At step five, the ALJ must consider Mr. Allen's ability to
perform other work that exists in the national economy.  Mr.
Allen would not be disabled if there is a significant number of
jobs in the national economy that he could perform.  The ALJ
found 1400 light and 200 sedentary unskilled jobs in which he
believes Mr. Allen would be able to perform based on his age,
education and RFC.  (R. at 60.)  In addition, the ALJ noted Mr.
Allen "is able to make an adjustment to work which exists in
significant numbers in the national economy."  (Id.)

**C.   Evidence in the Record**

1.   Plaintiff's Testimony and Application Materials

Plaintiff testified before the ALJ during a hearing on June
2, 2008, and described how his condition prevents him from being
able to maintain a steady job.  Mr. Allen stated he is not
allowed to drive due to his sleep apnea.  He claims he has been
involved in five automobile accidents in a three-month period.
(R. at 28.)  His fiancé and family members transport him in their
vehicles when necessary.  (R. at 18.)  He described the pain in
his left shoulder that resulted from an injury while working for
Campbell's Auto Express and subsequent surgery.  There is

numbness, an absence of muscle tone, and he feels tired.  (R. at
26.)  To address the breathing problem, Plaintiff stated he
initially received a CPAP machine to use and then a BiPAP machine
to replace the first one because he could not breathe well with
the former.  (R. at 29.)  However, by the time of this hearing
the BiPAP machine had not been working for the past four or five
months, and Mr. Allen could not have it replaced due to a lack of
health insurance.  (R. at 27.)  Plaintiff stated that he saw a
slight improvement in his breathing.  (R. at 28.)

Plaintiff stated that his breathing problem carries over
from sleeping at night to the daytime.  He attributed his
tiredness during the daytime to his lack of adequate rest at
night.  He wakes up feeling tired and falls asleep during the
day.  (Id.)  Sometimes his children wake him up.  (Id.)  Mr.
Allen believes this occurs over twenty times each day.  He stated
that the only way he knows he is sleeping, besides someone waking
him, is by snoring.  (R. at 29.)  Plaintiff thinks the condition
is worsening.  (R. at 30.)

Mr. Allen also discussed his weight gain.  The Plaintiff
gained sixty to seventy pounds since the onset of the problems he
claims he has.  (Id.)  He has tried to lose weight by cutting
back on alcohol and carbohydrate consumption in addition to using
fat burners, but he stated that none of these measures has
brought about significant weight loss. (Id.)  Furthermore, Mr.

7

Allen stated that he has high blood pressure, renal failure and gout. (R. at 31.) The Plaintiff received prescription pills to help the obstructive sleep apnea syndrome ("OSAS") but he did not take them regularly. (Id., 122.)

Plaintiff spends his time playing with his children, doing some household chores, and going to the gym once a week. (R. at 36-37, 129.) In an undated "Disability Report - Appeal," Plaintiff stated that he orders food for lunch because cooking certain foods takes too long and he has burned food before due to falling asleep. (R. at 159.) He receives temporary disability benefits but does not receive public assistance or food stamps. (R. at 20-21.) Mr. Allen's mother and brother assist him in taking care of his son. (R. at 126.) Plaintiff stated that his employment at a railroad construction company was terminated due to his OSAS. (R. at 24-25.)

    2.  Medical Evidence

        a.  Thomas Dwyer:  Surgeon

Dr. Dwyer first met with Plaintiff on November 2, 2005 due to complaints of left shoulder pain. (R. at 208.) Dr. Dwyer stated that Mr. Allen, after examination with an MRI, found fluid along the supraspinatus tendon and a possible SLAP lesion. He diagnosed Mr. Allen with a chronic separation of the left shoulder and a SLAP lesion of the left shoulder. (Id.) Following said examination, Dr. Dwyer conducted an arthroscopic

8

labral reconstruction operation of Plaintiff's left shoulder. (Id.) Plaintiff underwent physical therapy after the surgery and on January 11, 2006, Dr. Dwyer found Mr. Allen's status to be "an excellent surgical result . . . ." (R. at 209.) On February 2, 2006, Dr. Dwyer saw Mr. Allen once again and stated that Plaintiff had a full range of motion and was released to regular duty from his previous modified duty restriction. (Id.) The surgeon ended his post-operative notes stating that Plaintiff should be able to engage in most activities but should expect discomfort when lifting something greater than 50 pounds. (Id.)

b. Gregory Breen: Treating Physician

Dr. Gregory Breen first examined Mr. Allen on February 22, 2002, for a sleep evaluation. Dr. Breen noted that the Plaintiff fell asleep in the waiting room prior to the physician's evaluation. (R. at 174.) At the time of this letter, Dr. Breen stated that Mr. Allen was involved in two motor vehicle accidents. Furthermore, the doctor noted that Mr. Allen was recently diagnosed with hypertension and at that time was drinking heavily on weekends. Dr. Breen believed Mr. Allen's symptoms were suggestive of Advanced OSAS. (Id.) He prescribed that Plaintiff undergo an overnight sleep study. The Multiple Sleep Latency Test ("MSLT") was conducted on May 22, 2002 to assess daytime sleepiness and/or the presence of rapid eye movement ("REM"). The results led Dr. Breen to conclude that Mr.

9

Allen had severe daytime somnolence as a result of OSAS.  (R. at 176.)

Dr. Breen continued to monitor Mr. Allen and conducted a full overnight polysomnography to measure breathing, concluding that the OSAS was present with sleep fragmentations and severe oxygen desaturations.  (R. at 187.)  In his June 6, 2006 medical report, Dr. Breen could not provide a medical opinion regarding Mr. Allen's ability to do work-related activities.  (R. at 189.)  However, he determined that Mr. Allen presented "an imminent risk to self and others."  (Id.)  Due to such a risk Dr. Breen kept Mr. Allen from operating a motor vehicle.  (Id.)

The following year, on July 11, 2007, Dr. Breen had Plaintiff tested once again at the Center for Sleep Medicine at Underwood Memorial Hospital.  His admitting diagnosis was OSAS.  (R. at 238.)  The wakeful test results showed that Plaintiff did not sleep at all during the four forty-minute trials and "did not show evidence of excessive daytime somnolence."  (R. at 238.)  In a follow-up report, dated September 19, 2007, Dr. Breen noted that Plaintiff met with him because Mr. Allen claimed to have occasional sleepiness while driving and was involved in a recent motor vehicle accident.  (R. at 239.)  Dr. Breen kept the previous diagnosis of severe OSAS and ordered Plaintiff to continue using the BiPAP along with a trial of Provigil - a prescription medicine for wakefulness – to "optimize daytime

performance."  (Id.)

c.   Nithyashuba Khona: Consulting Physician

Dr. Khona conducted a consultative examination where no long-term doctor-patient relationship was created.  (R. at 233.) The doctor's report was completed on January 2, 2003, when Mr. Allen was twenty-eight years old.  Plaintiff complained of having OSAS, periods of not breathing while sleeping, headaches, and sometimes getting emotionally charged.  (Id.)  During this time, Mr. Allen claimed he did not cook out of fear of falling asleep. (Id.)  Plaintiff cared for himself when he could and was dependent on his family to assist him in carrying out certain tasks.  Dr. Khona diagnosed Plaintiff with sleep apnea and gave it a good prognosis.  The doctor stated that losing weight may help improve the sleep apnea.  (R. at 233.)

d.   Robert Walsh: State Agency Physician

Dr. Walsh conducted a physical residual functional capacity assessment on August 11, 2006.  Plaintiff's primary diagnosis was "s/p repair of SLAP lesion left shoulder" and the secondary diagnosis was "sleep apnea."  (R. at 210.)  Dr. Walsh found that Plaintiff was capable of occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds; standing and/or walking (with normal breaks) for a total of about 6 hours in an 8-hour workday; sitting (with normal breaks for a total of about 6 hours in an 8-hour workday; pushing and/or pulling

(including operation of hand and/or foot controls) with no restrictions, other than those given for lifting and/or carrying; and occasionally climbing ramps and stairs (but never ladders, ropes or scaffolds), balancing, stooping, kneeling, crouching and crawling. (R. at 211-12.) The doctor based these exertional limitations on Mr. Allen regaining full range of motion in the left shoulder and his sleep apnea being treated with a CPAP machine. (R. at 211.) In addition, the doctor did not establish any manipulative, visual, communicative or environmental limitations (R. at 213-14.) The doctor, without specifying which allegations he was referring to, noted that "the severity is not proportionate to the mer [medical evidence record] and the allegations are not credible. The ultimate effect on function is not consistent with the mer." (R. at 215.)

## III. DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Social Security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan,

970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  (Id.)  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical

13

evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981)).

The Third Circuit has held that access to the Commissioner's reasoning is essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  A district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams, 970 F.2d at 1182.  However, an ALJ need not explicitly discuss every piece of relevant evidence in his decision.  See Fargnoli, 247 F.3d at 42.

Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.  Disability Defined**

The Social Security Act defines "disability," for purposes of an individual's entitlement to DIB and SSI benefits, as the inability "to engage in any substantial gainful activity by

14

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Substantial gainful activity is "work that - (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.  This definition presupposes a regular, continuing, and sustained ability to perform such work.  Kangas v. Bowen, 823 F.2d 775, 778 (3d Cir. 1987).

The Commissioner has promulgated regulations that determine disability by application of a five-step sequential analysis codified in 20 C.F.R. § 404.1520.  The Commissioner evaluates each case, step-by-step, until a finding of "disabled" or "not disabled" is obtained, 20 C.F.R. § 404.1520(a), summarized as follows:

15

1. If the plaintiff currently is engaged in substantial gainful employment, the plaintiff is "not disabled."

2. If the plaintiff does not suffer from a "severe impairment," the plaintiff is "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the plaintiff is "disabled."

4. If the plaintiff can still perform work the plaintiff has done in the past ("past relevant work"), despite the severe impairment, the plaintiff is "not disabled."

5. Finally, the Commissioner will consider the plaintiff's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not the plaintiff is capable of performing other work which exists in the national economy. If the plaintiff is incapable, a finding of disability will be entered. On the other hand, if the plaintiff can perform other work, the plaintiff will be found not to be disabled.

See 20 C.F.R. § 404.1520(b)-(f).

This analysis involves a shifting burden of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the plaintiff to prove every element of her claim by a preponderance of the evidence. In the final step, however, the Commissioner bears the burden of proving that work is available for the petitioner: "Once a plaintiff has proved that he is

unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." <u>Kangas</u>, 823 F.2d at 777.

    **C.  Analysis**

        1.   <u>Whether the ALJ Appropriately Rejected Dr. Breen's Opinion As To The Severity of Plaintiff's Sleep Apnea</u>

Among Plaintiff's arguments that he is incapable of even limited light work was Plaintiff's claim that his obstructive sleep apnea syndrome (OSAS) prevents him from maintaining gainful employment because it causes him to involuntarily fall asleep while working.  This claim of excessive daytime somnolence was supported by the findings of Plaintiff's treating physician.  In 2002, Dr. Breen found that Plaintiff suffered from severe sleep apnea.  (R. at 174-87.)  In 2006, having seen Plaintiff every six months since 2002, Dr. Breen diagnosed Plaintiff with sleep apnea so severe that he represented an imminent risk to himself and others, and instructed Plaintiff not to drive.  (R. at 188-89.) In September 2007, Dr. Breen once again concluded that Plaintiff suffers from severe OSAS and recommended continued use of a BiPAP machine in addition to taking Provigil.  (R. at 239.)

The ALJ found that Plaintiff suffered from "excessive daytime somnolence."  (R. at 52, 61.)  However, the ALJ determined that the excessive daytime somnolence was not

sufficient to diminish Plaintiff's RFC below the ability to do limited light work.  Unfortunately, his reasons for that decision do not appear in the opinion.  Daytime somnolence (excessive or otherwise) is not listed among the factors that the ALJ found to diminish Plaintiff's capacity to perform light work, (R. at 56), nor does the opinion or the medical opinions upon which the ALJ may have relied, consider the effect of frequent, involuntary sleeping on Plaintiff's RFC.

The failure to explain and support the finding that Plaintiff's excessive daytime somnolence did not diminish Plaintiff's RFC is grounds for remand.  See Hargenrader v. Califano, 575 F.2d 434, 436-38 (3d Cir. 1978).  The ALJ simply cannot reach a conclusion without providing enough evidence to support his view.  As the Third Circuit Court of Appeals held in Hargenrader:

> an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision . . . . It is incumbent upon the examiner to make specific findings the court may not speculate as to his findings.

Id. at 437 (citing Baerga v. Richardson, 500 F.2d 309, 312-13 (3d Cir. 1974)).

The reason for this omission may be that, despite the ALJ's explicit findings, he did not actually believe Plaintiff suffered

from excessive daytime somnolence.  The ALJ offered several reasons to discount Dr. Breen's opinion as to excessive daytime somnolence and concluded that discussion with the opaque observation that he "only accepts Dr. Breen's opinion to support a residual functional capacity for less than light work with the preclusions found in this decision."  (R. at 57.)

Since disbelief that Plaintiff suffered from excessive daytime somnolence appears to have been the ALJ's actual rationale (despite his explicit findings to the contrary), and in order to assist the ALJ upon remand, the Court will consider the reasons offered by the ALJ for giving little weight to Dr. Breen's opinion.  The ALJ found that: the July 11, 2007 wakefulness study was inconsistent with Dr. Breen's opinion; there was a "lack of objective clinical or laboratory findings" to support Dr. Breen's assessment; Dr. Breen's opinion was "not supported by reports which indicate only routine outpatient care, with little or no continuing treatment or use of prescribed medication;" and Dr. Breen's opinion was "inconsistent with the plaintiff's self-reported activities of daily living."  (Id.)

None of these findings is supported by substantial evidence. The first reason given for the rejection of Dr. Breen's conclusions was the result of the 2007 wakefulness study. (R. at 238.)  The conclusion of the study — which involved a series of forty-minute trials during which Plaintiff was closely monitored

19

— was that the results "did not show evidence of excessive daytime somnolence." (Id.)  From this, the ALJ concluded that the objective evidence was "at odds" with Dr. Breen's opinion. (R. at 57.)

However, absence of evidence is not evidence of absence. Some tests are designed to yield a conclusive result regardless of the outcome.  In such cases, if the test did not show evidence of a condition, then one can reliably conclude that the condition tested for is not present.  But other medical tests only yield a conclusive result with some outcomes, and other outcomes yield no useful information.  There is nothing in the record to suggest that this sleep study was designed in such a way that failure to sleep during the test constitutes evidence that Plaintiff does not suffer from excessive daytime somnolence.  The ALJ appears to have mistakenly assumed without any evidence that this was such a test, and that the lack of a positive result on this test was inconsistent with Dr. Breen's opinion.  Significantly, Dr. Breen himself continued to believe that Plaintiff suffers from severe OSAS in his medical report subsequent to the wakefulness study he conducted.  (R. at 239.)  Given Dr. Breen's subsequent diagnosis and the fact that the ALJ's assessment is based on an unsupported assumption about the nature of the test, it was improper for the ALJ to find that the test results were inconsistent with severe

20

OSAS.[1]

The ALJ also cited "a lack of objective clinical or laboratory findings to support such a conclusion."  (R. at 57.) Here, the ALJ appears to have simply overlooked the objective clinical evidence in the record, including the Multiple Sleep Latency Test ("MSLT") that was conducted on May 22, 2002 that confirmed Dr. Breen's initial diagnosis.  On appeal, Defendant argues that Dr. Breen's materials from before 2006 are irrelevant because that information was part of a previous DIB claim that was dismissed, and because it constitutes nothing more than a recitation of symptoms.  These were not reasons given by the ALJ, and Defendant does not elaborate on why the fact that this information was in evidence for a previous dismissed action makes it irrelevant here.  It may not establish that Plaintiff has a disability preventing him from doing even less than light work, but it is still objective evidence of his symptoms supporting his doctor's claim that his sleep apnea is severe.  Defendant's characterization of the pre-2006 evidence as a mere report of symptoms is simply erroneous.  The evidence from that period includes the results of the Multiple Sleep Latency Test (MSLT),

---

[1]  Even if the ALJ was entitled to assume that absence of evidence of excessive daytime somnolence was the equivalent of evidence of the absence of excessive daytime somnolence, this would not justify the conclusion that Plaintiff suffered from no daytime somnolence whatsoever, in light of the evidence of record concerning Plaintiff's frequent episodes of daytime sleepiness.

which were positive for severe daytime somnolence.  (R. at 176.)

The finding that there was "little or no continuing treatment or use of prescribed medication" similarly appears to have overlooked the clear evidence in the record that indicates that Dr. Breen saw Plaintiff every six months for several years, and that he prescribed medication to Plaintiff.

The ALJ found that Dr. Breen's opinion as to the severity of Plaintiff's OSAS was inconsistent with Plaintiff's testimony about his daily living, noting:

> [T]he plaintiff reported that he takes care of his son by changing and feeding him, is able to prepare his own meals, cleans, sweeps, dust[s], and irons, but someone else comes in and cuts his grass.  Mr. Allen stated he goes outside almost everyday and is able to do food shopping and handle his finances . . . . Such a self-assessment of Mr. Allen's activities of daily living is indicative of a fairly active lifestyle.

(R. at 58.)  Plaintiff's argument is that he is physically able to perform various tasks, but that he frequently falls asleep while doing them.  It may be that frequently falling asleep during an otherwise "fairly active lifestyle" is not a sufficient impairment to support a disability finding, a determination that the ALJ will have to make upon remand, but the Court sees no reason why the tasks described are inconsistent with excessive daytime somnolence.

On appeal, Defendant maintains that Dr. Walsh's opinion (R. at 211) was inconsistent with Dr. Breen's, and that the ALJ could

have properly relied on Dr. Walsh instead of Dr. Breen. It is not clear whether the ALJ actually considered Dr. Walsh's opinion as to sleep apnea since the ALJ did not discuss any medical opinion on sleep apnea other than Dr. Breen's. The Court might assume that the ALJ examined the contents of Dr. Walsh's report for information on the subject of sleep apnea based on the ALJ's general statement that his overall assessment of Plaintiff's RFC was supported by unspecific portions of Dr. Walsh's opinion. (R. at 56.) But even so, the only discussion in Dr. Walsh's report about sleep apnea or daytime somnolence is a single line stating "sleep apnea treated with cpap." Even if this line is interpreted to mean "sleep apnea and associated daytime somnolence not a problem because it is being treated using CPAP," a conclusion that is not supported by any objective evidence in the record, Plaintiff's testimony and Dr. Breen's reports indicate that the Plaintiff is no longer being treated using CPAP. Dr. Walsh's report also includes in a different section a context-free statement that "the severity is not proportionate to the mer [medical evidence of record]," it is unclear whether Dr. Walsh is referring to the shoulder problems or the sleep apnea. If the ALJ understands that statement to refer to Plaintiff's sleep apnea, he should make that clear on remand.

In summary, the ALJ failed to provide his reasoning for why Plaintiff's excessive daytime somnolence did not diminish

Plaintiff's RFC.  Therefore, the Court cannot determine whether the ALJ's determination was in error.  To the extent that the ALJ may have believed that Plaintiff did not suffer from daytime somnolence despite his explicit findings to the contrary, such a belief was not made part of the ALJ's findings.  For these reasons, the matter will be remanded.  Upon remand, if the ALJ determines that his finding that Plaintiff suffers from excessive daytime somnolence is not in error, he must explicitly consider the effect of excessive daytime somnolence of Plaintiff's RFC.  If he finds that it was in error, he must state as much and rely on substantial evidence in making that determination.

> 2.    Whether the ALJ Properly Evaluated Plaintiff's Credibility with Regard to His Subjective Complaints

Plaintiff also asserts that the ALJ improperly rejected the credibility of his testimony regarding his sleep problems.  Generally speaking, subjective complaints "do not in themselves constitute disability." Green v. Schweiker, 749 F.2d 1066, 1070 (3d Cir. 1984).  They must be accompanied by medical signs and laboratory findings which show that the plaintiff has a medical impairment which could reasonably be expected to produce the symptoms alleged.  See Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971).  The ALJ is required to give serious consideration to the plaintiff's subjective complaints, even though those assertions are not fully confirmed by the objective

medical evidence, <u>Welch v. Heckler</u>, 808 F.2d 264, 270 (3d Cir. 1986), but the ALJ is not bound to accept unquestioningly the credibility of such subjective evidence.  <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).

A finding that Plaintiff is not credible requires a lack of supporting medical evidence by a physician.  <u>Dorf v. Bowen</u>, 794 F.2d 896 (3d Cir. 1986).  In addition, even if a medically determinable impairment exists which can reasonably be expected to produce the symptoms alleged, the intensity and persistence of symptoms must also be evaluated in order to determine how they might limit a plaintiff's ability to work.  <u>See</u> 20 C.F.R. § 404.1529(c)(1) (1995).

The ALJ stated that he "has reservations . . . as to whether the plaintiff's assertions can be fully credible."  (R. at 58.) However, this conclusion seems to be drawn from supporting evidence regarding Plaintiff's post-surgery health, which assessed his physical strength due to his shoulder being operated on rather than evidence regarding Plaintiff's OSAS.  Plaintiff's testimony regarding his OSAS is supported by objective medical evidence, while the ALJ's seeming rejection of that evidence is unexplained.

Plaintiff's subjective complaints are corroborated by physicians' examinations of Plaintiff as noted in the record. Although ALJ Shoemaker stated, "[d]espite the plaintiff's

25

assertions . . . the medical record does not support that the plaintiff's impairments are as severe as he contends," (R. at 56), such a statement seems to be unfounded.  The last note from Dr. Breen, for example, shows that he wants Plaintiff to continue using the BiPAP machine and begin a trial of Provigil to improve his "daytime performance."  (R. at 239.)

No medical evidence appears to counter or undermine the results of the MSLT conducted in 2002.  As stated earlier in this opinion, the test ordered by Dr. Breen showed that Plaintiff suffered from severe OSAS.  The ALJ does not believe that Plaintiff's condition is as severe as the test results purport it to be.  As stated in his opinion, the ALJ found that "the claimant has failed to show that he has any severe impairment, with the exception of . . . *excessive* daytime somnolence." (R. at 52) (emphasis added).  Thus, the ALJ should have provided in his opinion sufficient counter evidence that would explain why he believes that Plaintiff's condition is better than what the test makes it seem.  Such counter evidence that was provided (i.e., referring to the wakefulness test results) is not satisfactory, for reasons stated above.  This Court is cognizant of the fact that Dr. Breen prescribed the aforesaid Provigil drug on September 19, 2007, more than five years after he began seeing Mr. Allen, to continue to help Mr. Allen's daytime somnolence improve.  Again, this decision by the treating physician

26

underscores the continued severity of Plaintiff's condition.

Although the opinions of Drs. Khona and Walsh differ from that of Dr. Breen in that they do not find Plaintiff's subjective complaints highly credible, Dr. Breen's opinion matters most as Plaintiff's treating physician.  The Third Circuit has long held that "[a] court considering a claim for disability benefits must give greater weight to the findings of a treating physician." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).  See Kane v. Heckler, 776 F.2d 1130, 1135 (3d Cir. 1985).  This is particularly true "'when the opinion reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987) (quoting Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984)).

Dr. Breen entered into a doctor/patient relationship with Mr. Allen in 2002 and has served as his treating physician for obstructive sleep apnea.  Drs. Khona and Walsh, on the other hand, were one-visit consultants.  Dr. Khona simply conducted a consultative examination in 2003, and Dr. Walsh met with Plaintiff in August 2006, and assessed his RFC.  Dr. Walsh's findings relate to Plaintiff's physical capabilities.  His only discussion of Plaintiff's sleep apnea is one brief line stating "sleep apnea treated with cpap."

In summary, the ALJ does not identify medical evidence that

27

undermines Plaintiff's credibility regarding his OSAS.[2] Plaintiff's subjective symptoms are supported by Dr. Breen's notes and the objective medical evidence.

      3.   <u>Whether Remand is Required</u>

Having found that the ALJ either did not provide his reasoning for why Plaintiff's daytime somnolence impairment did not fully diminish his RFC or used improper reasoning to come to this conclusion, this Court will remand for further consideration.  Furthermore, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).  The record is not so clear as to compel a finding of disability through a reversal; but the record is incomplete and requires reconsideration through remand.

**IV.  CONCLUSION**

For the reasons stated above, this Court will vacate and remand to the ALJ for reconsideration and further explanation of

---

     [2]  The third issue Plaintiff brings forth concerns the ALJ's reliance on the DOT in step five of the analysis to ascertain alternative work Plaintiff can perform.  An ALJ is not permitted to rely solely on the medical vocational guidelines to find Plaintiff disabled when Plaintiff has non-exertional impairments. <u>See</u> <u>Sykes v. Apfel</u>, 228 F.3d 259 (3d Cir. 2000).  However, at step four, the ALJ determined that Plaintiff could return to his past relevant work (finding him not disabled), making the step five analysis and Plaintiff's concern about such analysis moot. Making a step five analysis would have been necessary if the ALJ determined that Plaintiff could not perform work he has held in the past.

his findings in light of Plaintiff's subjective complaints and
the objective medical evidence in the record, as well as the need
for due deference to conclusions of the treating physician and
for an explanation of credibility findings in the face of
medically documented complaints.  The accompanying Order is
entered.


**February 19, 2010**                        **s/ Jerome B. Simandle**
DATE                                     JEROME B. SIMANDLE
                                         United States District Judge

29